UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

REGGIE CASWELL,

                Plaintiff,

-against-                            9:19-CV-0141 (LEK/ATB)

DONALD G. UHLER, *et al.*,

                Defendants.

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Reggie Caswell has brought this action under 42 U.S.C. § 1983 against several employees of Upstate Correctional Facility ("Upstate C. F."): Superintendent Donald G. Uhler, Assistant Deputy Superintendent Denise E. Sauther, Lieutenant Thomas F. Quinn, Lieutenant Craig S. Rowe, Sergeant Charles E. Coryea, Sergeant Paul L. Fletcher, Sergeant Darren Pilon, Sergeant Randal J. Smith, Sergeant Bruce A. Truax, Correction Officer Austin A. Helms, Correction Officer Dustin J. Hollenbeck, Correction Officer Chris King, and Correction Officer Matthew B. Welch (collectively, "Defendants"). Dkt. No. 1 ("Complaint"). Plaintiff's claims arise out of his confinement in Upstate C. F.'s Special Housing Unit ("SHU") in 2016. Fletcher, Rowe, Truax, Quinn, and Coryea (collectively, "Moving Defendants")[1] have moved this Court to dismiss one count of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedural 12(b)(6) for failure to state a claim upon which relief may be granted. Dkt. Nos. 25 ("Motion to Dismiss"); 25-1 ("Moving Defendants' Memorandum"). Plaintiff has filed a response, Dkt. No.

---

[1] Helms, Hollenbeck, Pilon, Sauther, Smith, Uhler, and Welch answered the Complaint on May 20, 2019, Dkt. No. 24, while King answered the Complaint on July 11, 2019, Dkt. No. 34.

32 ("Plaintiff's Response"), to which Moving Defendants have filed a reply, Dkt. No. 35 ("Moving Defendants' Reply").

For the reasons that follow, Moving Defendants' Motion to Dismiss is granted in part and denied in part.

## II. BACKGROUND

The Court draws all facts, which are assumed to be true, from the Complaint. Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012). "For purposes of a motion to dismiss," the Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." Rothman v. Gregor, 220 F.3d 81, 88–89 (2d Cir. 2000). Below is a summary of the facts relevant to the Motion to Dismiss. A complete set of facts may be found in the Complaint.

Plaintiff, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), was transferred to Upstate C. F. on or about March 21, 2016 to serve a disciplinary sanction. Compl. ¶¶ 5, 13. Upon admission, Plaintiff informed Fletcher he is homosexual and requested that he not be housed with a bunkmate known to be hostile toward gays. Id. ¶ 14. Fletcher responded that Plaintiff should "save the semen" if he were ever raped by his bunkmate and assigned Plaintiff to a SHU cell that already housed "an alleged rapist" ("Cellmate No. 1"). Id. ¶¶ 15–16. Cellmate No. 1 threatened to physically assault Plaintiff if he ever stepped foot off the top bunk of the cell unless Plaintiff needed to relieve himself or shower. Id. ¶ 17. Cellmate No. 1 "also routinely made inappropriate overtures of sexual favors in exchange for Plaintiff's freedom to move about their shared cell." Id.

After moving in with Cellmate No. 1, "Plaintiff wrote DOCCS staff, including Defendants Uhler and Sauther, explicitly notifying them of his well-founded fears for his physical safety at the hands of his first cellmate and others at Upstate, and requesting to be housed in a single-occupancy cell." Id. ¶ 18. On March 27, 2016, Plaintiff filed a grievance requesting to be placed in a single-occupancy cell given his sexual orientation and Cellmate No. 1's threats. Id. ¶ 19. The next day, Rowe interviewed Plaintiff in connection with the grievance. Id. ¶ 20. In determining whether Plaintiff should be transferred to his own cell for protection, Rowe inquired whether Plaintiff was "gay" or "really, really gay." Id. ¶ 21 (internal quotation marks omitted). Rowe decided Plaintiff should remain in a two-bunk cell because "he did not appear to be 'too gay.'" Id. Rowe promised to find Plaintiff a "more compatible" bunkmate. Id. ¶ 22. "By the time Plaintiff returned to his cell after the Rowe interview, a new cellmate had been assigned and had already moved into Plaintiff's cell" ("Cellmate No. 2"). Id. ¶ 23. However, Rowe knew Cellmate No. 2 was "homophobic," id. ¶ 25, and Cellmate No. 2 proceeded to "terrorize[] every aspect of Plaintiff's life at Upstate." Id. ¶ 27. For instance, Cellmate No. 2 informed Plaintiff that he "hates gays" and "immediately began restricting Plaintiff's movements within the shared cell with threats of violence." Id. ¶ 26 (internal quotation marks omitted). He "also forced [Plaintiff] always to remain on the top bunk except to use the toilet or shower" and "only permitted Plaintiff to use the recreation cage connected to the cell when [Cellmate No. 2] wanted privacy to masturbate." Id. ¶ 27.

On April 2, 2016, Plaintiff sought assistance from Prisoners' Legal Services of New York regarding "the abuse he was experiencing at Upstate for being gay and [Plaintiff's] fears for his

physical safety." Id. ¶ 28. Both Plaintiff and Cellmate No. 2 then submitted grievances[2] requesting reassignment to different cells given their incompatibility in sexual preferences. Id. ¶¶ 29–30. After Plaintiff's attorneys made inquiries with Upstate C. F. officials regarding the status of Plaintiff's complaints against Cellmate No. 2, Truax interviewed Plaintiff on or about May 12, 2016. Id. ¶¶ 31–34. Truax then sent Plaintiff back to his cell while pledging to investigate Plaintiff's concerns. Id. ¶ 35. Plaintiff then met with Quinn on May 19, 2016 about his complaint against Cellmate No. 2, but "Quinn informed Plaintiff that Upstate was a double-bunk facility and that 'you guys got to get along.'" Id. ¶ 37. After Plaintiff's attorneys tried to have DOCCS officials reassign Plaintiff to a new cell, Coryea interviewed Plaintiff on May 25, 2016 regarding his grievance against Cellmate No. 2. Id. ¶¶ 38–41. Plaintiff asked Coryea to assign him to his own cell, but Coryea instead placed Plaintiff with a new cellmate ("Cellmate No. 3"). Id. ¶ 42. Cellmate No. 3 "restricted [Plaintiff's] movement in the shared cell due to Plaintiff's sexual orientation." Id. ¶ 43. In mid-June 2016, Upstate C. F. transferred Cellmate No. 3 to a different prison. Id. ¶ 54.

In July 2016, Smith and Hollenbeck moved Plaintiff into a cell with "inmate Jones" ("Cellmate No. 4") who was "homophobic and a member of the Bloods gang." Id. ¶¶ 58–60. Thereafter, Cellmate No. 4 assaulted Plaintiff. Id. ¶ 73. Specifically, the Complaint alleges:

> Jones repeatedly punched Plaintiff in the face with a closed fist. Plaintiff fell to the ground, whereupon Jones began repeatedly stomping on and hitting him in his shoulders, back, and ribs. Plaintiff managed to hoist himself up from the floor while Jones continued swinging at him. Jones then smashed Plaintiff's face twice into the table.

---

[2] Plaintiff technically submitted an addendum to his March 27, 2016 grievance instead of an additional grievance. See id. ¶ 29.

Id.

Moving Defendants have moved to dismiss Plaintiff's claims that they have violated Plaintiff's Eighth Amendment and Fourteenth Amendment[3] rights under § 1983 by failing to protect Plaintiff from threats of assault made by Cellmate Nos. 1–3 and actual assault perpetrated by Cellmate No. 4. Id. ¶¶ 100–15.[4]

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (citing Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Put another way, a claim is plausible if it is supported by "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. In assessing whether this standard has been met, courts "must accept all allegations in the complaint as true and draw all inferences in

---

[3] Specifically, Plaintiff alleges Moving Defendants violated the Fourteenth Amendment's Due Process Clause. See id. ¶¶ 100–15. The Due Process Clause of the Fourteenth Amendment contains both a procedural and substantive component. Zinermon v. Burch, 494 U.S. 113, 125 (1990). Plaintiff alleges Moving Defendants along with Uhler, Sauther, Pilon, and Smith violated his substantive due process rights. Compl. ¶¶ 100–15.

[4] Plaintiff also brings these claims against several defendants who are not the subject of this motion: Uhler, Sauther, Pilon, and Smith.

the light most favorable to the non-moving party[] . . . ." In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) (internal citation omitted).

**IV. DISCUSSION**

"42 U.S.C. § 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of the right, privilege or immunity secured by the Constitution or the laws of the United States." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). Section 1983 does not create any substantive rights; it provides civil litigants a procedure to redress the deprivation of rights established elsewhere. Id. (citing City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985)). "To prevail on a § 1983 claim, a plaintiff must establish that a person acting under the color of state law deprived him of a federal right." Id.

**A. Eighth Amendment**

As another court in this circuit has observed:

> "Failure to provide an inmate with adequate security may be the basis for a § 1983 claim[.]" Coronado v. LeFevre, 886 F. Supp. 220, 223 (N.D.N.Y. 1995) (citing Stubbs v. Dudley, 849 F.2d 83, 85 (2d Cir. 1988)). The Supreme Court has held that a prison official's failure to protect an inmate violates the Eighth Amendment when two requirements are satisfied: "First, the deprivation [of rights] alleged must be, objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). In the context of a failure-to-protect claim, this requires that the inmate "show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. Second, the defendant must be deliberately indifferent to inmates' health or safety. Id.

Colon v. Jackson, No. 17-CV-2395, 2018 WL 4680993, at *2 (S.D.N.Y. Sept. 28, 2018). "Deliberate indifference is a subjective standard requiring proof of actual knowledge of risk by the prison official." Cash v. Cty. of Erie, 654 F.3d 324, 341 n.8 (2d Cir. 2011). A defendant acts with deliberate indifference if "he has knowledge that an inmate faces a substantial risk of

6

serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996).

> 1. *Cellmates Nos. 1–3*

For Cellmate Nos. 1–3, Moving Defendants argue they could not have violated Plaintiff's Eighth Amendment rights because "Plaintiff fails to allege that he suffered any physical injuries—let alone the requisite 'sufficiently serious injury'—at the hands" of those cellmates. Moving Defs.' Mem. at 6. They additionally argue that "the very facts asserted in the Complaint undermine Plaintiff's claim that the Moving Defendants were deliberately indifferent." Id. Save Moving Defendants' arguments regarding Coryea, the Court disagrees.

It is true that "a pleading which merely asserts an unsubstantiated fear of harm fails to plead substantial risk of serious harm.'" Douglas v. Annuci, No. 14-CV-6018, 2017 WL 5159194, at *6 (W.D.N.Y. Nov. 7, 2017) (discussing cases). "But the failure to protect an inmate from the risk of serious injury at the hands of another inmate may violate the first inmate's rights whether or not the attack actually occurs." Elleby v. City of New York, No. 14-CV-1436, 2014 WL 7242899, at *4 (S.D.N.Y. Dec. 16, 2014); see also Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985) ("An inmate's right to be protected from constant threats of violence and sexual assault from other inmates does not require that he wait until he is actually assaulted before obtaining relief."). To hold otherwise might incentivize prison officials to ignore an inmate's pleas for protection from impending assaults since those officials would only be on the hook if the prisoner were actually attacked. A contrary holding therefore might result in more attacks, not fewer. With these principles in mind, the Court will assess whether Plaintiff has plausibly stated a claim against each of the Moving Defendants.

Plaintiff has sufficiently stated an Eighth Amendment claim against Fletcher concerning Cellmate No. 1. Regarding the objective component of the failure-to-protect analysis, Cellmate No. 1 threatened to both physically and sexually assault Plaintiff. See Compl. ¶ 17. Plaintiff was so concerned about his safety given Cellmate No. 1's threats that he made multiple requests for a single-occupancy cell, including submitting a grievance on March 27, 2016. Id. ¶¶ 18–19. Hence, Plaintiff has adequately pled he faced substantial risk of serious harm. See Douglas, 2017 WL 5159194, at *6 (finding the plaintiff faced a substantial risk of harm of being attacked again by other inmates since "there [was] an active 'contract' on his life" and he "ha[d] already been slashed by Bloods gang members on five occasions"); Calipo v. Wolf, No. 18-CV-320, 2019 WL 6879570, at *12 (W.D. Pa. Nov. 15, 2019) (concluding that the plaintiff faced a substantial risk of harm when other inmates "threatened her with physical violence"), report and recommendation adopted by No. 18-CV-320, 2019 WL 6877181 (W.D. Pa. Dec. 17, 2019). And regarding the subjective prong, Fletcher acknowledged Plaintiff's fear of being assaulted by a bunkmate hostile toward gays as indicated by his callous remark that Plaintiff should "save the semen" if Plaintiff were ever raped by his bunkmate. Compl. ¶ 15. Yet instead of taking action to alleviate Plaintiff's concerns, the facts suggest Fletcher may have knowingly placed Plaintiff in harm's way, as indicated by Cellmate No. 1's notoriety as "an alleged rapist." Id. ¶ 16. Consequently, Plaintiff has adequately pled Fletcher acted deliberately indifferent towards Plaintiff. See Walker v. Shaw, No. 08-CV-10043, 2010 WL 2541711, at *11 (S.D.N.Y. June 23, 2010) (finding prison officials acted with deliberate indifference to an inmate's safety where the prisoner, though never actually assaulted, was a member of a prison gang and placed in a rival gang's housing area); Montero v. Crusie, 153 F. Supp. 2d 368, 377 (S.D.N.Y. 2001) (concluding

correction officers acted with deliberate indifference in failing to protect a plaintiff when they encouraged another inmate to attack the plaintiff and even though that inmate never actually assaulted the plaintiff).

Additionally, Plaintiff has adequately stated Eighth Amendment claims against Rowe, Truax, and Quinn concerning Cellmate No. 2. Regarding the objective component, Cellmate No. 2 threatened Plaintiff with physical violence, and he "terrorized every aspect of Plaintiff's life at Upstate." See Compl. ¶¶ 26–27. Plaintiff remained so concerned about his safety given Cellmate No. 2's treatment of him that he sought legal assistance and filed an addendum to his first grievance. Id. ¶¶ 28–29. Accordingly, Plaintiff has plausibly pled he faced substantial risk of serious harm. See Douglas, 2017 WL 5159194, at *6; Calipo, 2019 WL 6879570, at *12. And regarding the subjective prong, Rowe acknowledged Plaintiff's fear of being attacked by a cellmate hostile towards homosexuals as evidenced by his insensitive question of whether Plaintiff was "gay" or "really, really gay." Compl. ¶ 21. But instead of taking action to address Plaintiff's concerns, Rowe knowingly let Plaintiff be placed with a "homophobic" inmate since Plaintiff "did not appear to be 'too gay.'" Id. ¶¶ 21, 25. And while Truax also acknowledged Plaintiff's apprehension about bunking with Cellmate No. 2 by pledging to investigate Plaintiff's concerns, he did not separate Plaintiff from Cellmate No. 2. Id. ¶¶ 34–35. Finally, when Plaintiff met with Quinn about his grievance against Cellmate No. 2, Quinn simply "informed Plaintiff that Upstate was a double-bunk facility and that 'you guys got to get along.'" Id. ¶ 37. Therefore, Plaintiff has sufficiently averred that Rowe, Truax, and Quinn acted with deliberate indifference towards Plaintiff in either allowing Plaintiff to be placed with Cellmate No. 2 or keeping Plaintiff

in his placement with that inmate. See Walker v. Shaw, 2010 WL 2541711, at *11; Montero, 153 F. Supp. 2d at 377.

Plaintiff, however, has not adequately stated an Eighth Amendment claim against Coryea concerning Cellmate No. 3. Upon interviewing Plaintiff about his complaint against Cellmate No. 2, Coryea assigned Plaintiff a new bunkmate. Compl. ¶ 42. While Cellmate No. 3 "restricted [Plaintiff's] movement in the shared cell due to Plaintiff's sexual orientation," id. ¶ 43, Plaintiff has not plausibly alleged that Coryea knew that Plaintiff faced a substantial risk from Cellmate No. 3. Plaintiff asserts Coryea "knowingly assigned Plaintiff's third cellmate – a member of the Crips rival gang called the 'Bloods,' which shared the Crips dislike for homosexual conduct in prison." Pl.'s Resp. at 10 (citing Compl. ¶ 43). But nowhere in the Complaint, let alone Paragraph 43 of the Complaint, does Plaintiff allege Coryea knew Cellmate No. 3 may harm Plaintiff because Plaintiff is gay. Paragraph 43 states:

> Upon information and belief, Plaintiff's third cellmate was a member or former member of the "Bloods" gang, the principal rival gang to the "Crips," which was known to Defendant Coryea. Plaintiff's third cellmate also restricted his movement in the shared cell due to Plaintiff's sexual orientation.

Compl. ¶ 43. Moreover, Bistrian v. Levi, 696 F.3d 352, 368–69 (3d Cir. 2012) and Williams v. Bledsoe, No. 12-CV-1235, 2013 WL 5522848, at *21 (M.D. Pa. Oct. 3, 2013), upon which Plaintiff relies, do not in fact suggest that Plaintiff has sufficiently pled Coryea treated Plaintiff with deliberate indifference. In Bistrian, the Court found prison officials were deliberately indifferent for placing the plaintiff in a recreation pen with an inmate that the officials knew had previously threatened the plaintiff. Bistrian, 696 F.3d at 369. And in Williams, the plaintiff "alleged that he provided multiple written and verbal warnings and pleas to the defendants that

10

he was in danger" from two other inmates "and needed to be re-celled, prior to being viciously assaulted on two separate occasions by [those two] cell mates." Williams, 2013 WL 5522848, at *21. Here, however, Plaintiff has not alleged any facts to suggest Coryea knew of any risk that Cellmate No. 3 posed to Plaintiff. Because Plaintiff has not averred that Coryea acted with deliberate indifference in assigning Plaintiff to bunk with Cellmate No. 3, his Eighth Amendment claim against Coryea regarding that inmate must be dismissed.

    2. *Cellmate No. 4*

For Cellmate No. 4, Moving Defendants argue they could not have violated Plaintiff's Eighth Amendment rights because they did not act with deliberate indifference in initially assigning Plaintiff to bunk with Cellmate No. 4 or keeping him in that placement. Moving Defs.' Mem. at 5. The Court agrees.

It is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)); Iqbal, 556 U.S. at 676. "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" Austin v. Pappas, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). "[V]icarious liability is inapplicable to . . . § 1983 suits." Iqbal, 556 U.S. at 676.

Plaintiff admits that Smith and Hollenbeck, rather than any of the Moving Defendants, assigned Plaintiff to bunk with Cellmate No. 4. Compl. Id. ¶¶ 58–60. Additionally, Plaintiff does not allege that Moving Defendants were in a supervisory role such that they could affect Smith

11

and Hollenbecks' decision to place Plaintiff with Cellmate No. 4. See Conklin v. Cty. of Suffolk, 859 F. Supp. 2d 415, 443 (E.D.N.Y. 2012) ("[A]n official with no 'hiring, firing, or disciplinary power over any supervisory staff or personnel . . . [or] no direct power to control or direct the customs and policies of the [workplace]' has no personal involvement in the unconstitutional conduct, and a claim under § 1983 cannot be sustained as to that individual." (quoting Morris v. Eversley, 282 F. Supp. 2d 196, 207 (S.D.N.Y. 2003)). Nor does Plaintiff aver he spoke "to any of the Moving Defendants after he was moved into the cell with [Cellmate No. 4] or that the Moving Defendants were actually aware of any issues surrounding his housing with [Cellmate No. 4]." Moving Defs.' Reply at 2. Because Plaintiff has not pled that any of the Moving Defendants acted with deliberate indifference in initially assigning Plaintiff to bunk with Cellmate No. 4 or keeping him in that placement, his Eighth Amendment claims against Moving Defendants regarding Cellmate No. 4 must be dismissed.

### B. Fourteenth Amendment

Moving Defendants argue that Plaintiff's claims brought under the Fourteenth Amendment should be dismissed as duplicative of his Eighth Amendment claims. The Court agrees.

As noted by another court in this circuit:

> "If a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, [520 U.S. 259, 272 n.7 (1997)]. Applying that principle, courts have held that "[t]here is no sustainable substantive due process claim in the alternative to a claim governed under the Eighth Amendment . . . ." Davis v. Pennsylvania Dep't of Corrections, No. 05–1558, 2006 WL 2927631, at *10 (W.D. Pa. Oct.12, 2006).

Graham v. Poole, 476 F. Supp. 2d 257, 261 (W.D.N.Y. 2007).

Because Plaintiff brought claims against Moving Defendants under the Eighth Amendment, his substantive due process claims against them under the Fourteenth Amendment must be dismissed. See Madison v. Mazzuca, No. 02-CV-10299, 2004 WL 3037730, at *11 (S.D.N.Y. Dec. 30, 2004) ("Because Madison's deliberate indifference claim is covered by the Eighth Amendment, the substantive due process claims are duplicative . . . . Therefore, the substantive due process claims are dismissed as to all Defendants.").

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Moving Defendants' Motion to Dismiss (Dkt. No. 25) is **GRANTED in part**. Plaintiff's Eighth Amendment claim against Coryea is **DISMISSED without prejudice**. Plaintiff's Fourteenth Amendment claims against all Moving Defendants are **DISMISSED with prejudice** as duplicative of Plaintiff's Eighth Amendment claims; and it is further

**ORDERED**, that Plaintiff may move to replead his Eighth Amendment claim against Coryea within **sixty days** of the date of this Memorandum-Decision and Order; and it is further

**ORDERED**, that Moving Defendants' Motion to Dismiss is otherwise **DENIED**. Plaintiff's Eighth Amendment claims against Fletcher, Rowe, Truax, and Quinn may proceed; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   March 16, 2020
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge