**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

REGGIE CASWELL,

Plaintiff, 9:19-cv-141 (ECC/MJK)

v.

DONALD G. UHLER, *et al.*,

Defendants.

---

Reggie Caswell, *Pro Se Plaintiff*
Jorge A. Rodriguez, Esq., *for Defendants*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

Plaintiff Reggie Caswell brought this action under 42 U.S.C. § 1983 against multiple Defendants arising out of his incarceration at Upstate Correctional Facility. *See* Dkt. No. 1. After a five-day trial, the jury returned a verdict finding that Plaintiff failed to prove his claims by a preponderance of the evidence. Dkt. No. 173. The Court entered judgment accordingly. Dkt. No. 174. Plaintiff's counsel subsequently withdrew representation, and Plaintiff has since proceeded *pro se*. Dkt. Nos. 176, 178. Presently before the Court are Plaintiff's motions for (1) judgment as a matter of law under Federal Rule of Civil Procedure 50(a) and (b), (2) a new trial under Federal Rule of Civil Procedure 59(a), and (3) altered or amended judgment under Federal Rule of Civil Procedure 59(e), Dkt. No. 177, and (4) Defendants' motion for a bill of costs, Dkt. No. 175. The motions are fully briefed, Dkt. Nos. 181, 183, 193, 195, 197, 204. For the following reasons, Plaintiff's motions are denied, and Defendants' motion for a bill of costs is granted in part.

## I. PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Plaintiff argues that he is entitled to judgment as a matter of law based on the facts as he presents them in his motion. Dkt. Nos. 177 at 20–27; 204 at 4–18.[1] Defendants respond that Plaintiff may not move for judgment as a matter of law under Federal Rule of Civil Procedure Rule 50(b) because he did not move for judgment as a matter of law before the jury received the case, but even if the Court were to consider the motion, "[t]here is an abundance of evidence supporting the jury's verdict of no cause of action." Dkt. No. 197-9 at 8–9.

### A. Legal Standard

"The standard governing motions for judgment as a matter of law (JMOL) pursuant to Rule 50 . . . is well established."[2] *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998) (internal citation omitted). "A [party] is entitled to judgment as a matter of law if, after a party has been fully heard on an issue during trial, the Court finds that 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . .'" *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 535 (S.D.N.Y. 2011) (quoting Fed. R. Civ. P. 50(a)(1)). In determining whether there was a legally sufficient evidentiary basis for the jury's conclusion, a court must "defer[ ] to the jury's assessment of the evidence and all reasonable inferences the jurors could draw from that evidence," and "may not itself weigh the credibility of witnesses or consider the weight of the evidence." *Meloff v. N. Y. Life Ins. Co.,* 240 F.3d 138, 145 (2d Cir. 2001) (internal citation and quotation marks omitted). "A movant's burden in securing

[1] Unless otherwise noted, citations to page numbers refer to pagination generated by the ECF system.

[2] This paragraph's discussion of the legal standard for a Rule 50(a) motion is taken from Judge Sullivan's thorough discussion in *Toliver v. New York City Dep't of Corrections*, 202 F. Supp. 3d 328, 333–34 (S.D.N.Y. 2016).

Rule 50 relief is particularly heavy after the jury has deliberated in the case and actually returned its verdict." *Cross v. New York City Transit Auth.,* 417 F.3d 241, 248 (2d Cir. 2005).

> Under such circumstances, the district court may set aside the verdict only where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against him.

*Id.* (alterations and internal quotation marks omitted).

"A Rule 50(a) motion made before submission of the case to the jury is a necessary predicate to a post-trial motion pursuant to Rule 50(b), *Bracey v. Bd. of Educ. of City of Bridgeport*, 368 F.3d 108, 117 (2d Cir. 2004), which essentially is a renewal of a Rule 50(a) motion after an unfavorable verdict on the grounds specifically raised in the Rule 50(a) motion, *Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001), and, as such, is 'limited to those grounds that were specifically raised in the prior [Rule 50(a) motion]'." *Wierzbic v. Howard*, 331 F.R.D. 32, 45 (W.D.N.Y. 2019), *aff'd*, 836 F. App'x. 31 (2d Cir. 2020) (quoting *Galdieri-Ambrosini*, 136 F.3d at 286). In other words, "'[a] post-trial Rule 50(b) motion for judgment as a matter of law is properly made only if a Rule 50(a) motion for judgment as a matter of law has been made before submission of the case to the jury.'" *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 41 (2d Cir. 2025) (quoting *Bracey*, 368 F.3d at 117). "If a party fails to move under Rule 50(a) before the matter is submitted to the jury but 'later moves under Rule 50(b), the standard for granting judgment as a matter of law is elevated, and the motion may not properly be granted by the district court . . . except to prevent manifest injustice.'" *Id.* (quoting *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014)). "'Manifest injustice exists where a jury's verdict is wholly without legal support.'" *Id.* (quoting *ING Global,* 757 F.3d at 97).

**B. Analysis**

As an initial matter, Plaintiff, who was represented by able counsel at the time, did not move for judgment as a matter of law under Rule 50(a) before the case was submitted to the jury. Only now, in his motion papers, does Plaintiff summarily state that "it is Plaintiff's contention[ ] that there was a complete absence of any evidence to support the jury's verdict in this case." Dkt. No. 177 at 20. Given that Plaintiff's counsel did not file a Rule 50(a) motion before the case was submitted to the jury, Plaintiff must therefore meet the manifest injustice standard.

Plaintiff argues that the jury should have credited his version of events. *See* Dkt. No. 204 at 6–17. His assertions therefore "go to the proper weight afforded to the trial evidence, which is not a proper basis for a Rule 50(b) motion." *Hutchinson v. Grace*, No. 19 Civ. 270, 2022 WL 1154347, at *3 (S.D.N.Y. Apr. 19, 2022) (internal quotation and citation omitted). Furthermore, "in deciding any Rule 50 motion, a court must give deference to all credibility determinations and reasonable inferences of the jury, and may not weigh the credibility of witnesses or otherwise consider the weight of the evidence." *Id.* at *2 (internal quotation and citation omitted).

Indeed, as set forth in Defendants' response, the jury could reasonably have chosen to credit the testimony and evidence presented by Defendants. Regarding Plaintiff's failure to protect claims, the jury could have reasonably chosen to credit the testimony of Defendants Fletcher, Uhler, Pilon, and Smith, who testified that DOCCS staff properly placed Plaintiff within the facility, investigated Plaintiff's allegations of harassment and abuse by his cellmates, and determined that Plaintiff was not at risk of harm and believed Plaintiff was submitting false complaints. *See* Dkt. No. 197 at ¶¶ 9–77; Dkt. No. 185 at 228–392; Dkt. No. 186 at 407–529. Moreover, Defendants also testified as to their personal involvement (or lack thereof) in investigations and decisions to place Plaintiff with cellmates. *See id.* Regarding the excessive use

of force and failure to intervene claims, the jury could have reasonably chosen to credit the testimony of Defendants Fletcher, Helms, and Hollenbeck, as well as non-party witnesses Chris King and Matthew Welch, who testified about their observations that Plaintiff was the aggressor in a cell fight, and the force used by other Defendants to end the disturbance or to restrain individuals. *See* Dkt. No. 197 at ¶¶ 25–29, 78–147; Dkt. No. 185 at 315–17; Dkt. No. 186 at 580–611; Dkt. No. 187 at 653–61, 699–717, 731–45. The jury could also reasonably have considered this testimony in assessing the credibility of the witnesses about the entire sequence of events on July 16, 2016. *See id.*

"That [the jury] reached a result that Plaintiff feels was erroneous does not render the verdict 'wholly without legal support.'" *Hutchinson,* 2022 WL 1154347, at *3; *see also id.* ("Plaintiff's arguments fail because they do not call into question the legal support for the jury's verdict."). Plaintiff has therefore not satisfied the elevated "manifest injustice" standard. For all of these reasons, there was sufficient evidence to support the jury's verdict as to each of Plaintiff's claims, and Plaintiff's Rule 50(a) and (b) motion is therefore denied.

## II. PLAINTIFF'S MOTION FOR A NEW TRIAL

Plaintiff argues that he should receive a new trial because of an erroneous jury instruction and three evidentiary errors involving (1) the scope of his expert witness's testimony, Dkt. No. 177 at 24, (2) Defendant Helms' 2019 conviction for first-degree cruelty to animals, *id.* at 16, and (3) defense counsel's presentation of a letter regarding his disciplinary history during his closing argument, *id.* at 26. Defendants respond that although the Court made an error when reading the final instructions, as agreed by the parties, the Court adequately corrected that error, Dkt. No. 197-9 at 15–16; the Court did not erroneously preclude Plaintiff's expert from testifying, *id.* at 11–13; the Court did not improperly preclude testimony regarding the name of Defendant Helms' criminal

conviction, *id.* at 13–14; and Plaintiff's argument regarding defense counsel's summation is not supported by the record, *id.* at 16–17.

### A. Legal Standard[3]

Pursuant to Federal Rule of Civil Procedure 59, a court may, "on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The decision to grant a new trial is left to the discretion of the trial judge, and a "motion for a new trial should be granted when, in the opinion of the district court, 'the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'" *Song v. Ives Lab'ys, Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992) (quoting *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir. 1988)). "The general grounds for a new trial are that (1) the verdict is against the clear weight of the evidence; (2) the trial court was not fair; (3) substantial errors occurred in the admission or rejection of evidence o[r] the giving or refusal of instructions to the jury; or (4) damages are excessive." *Utica Mut. Ins. Co. v. Century Indem. Co.*, 419 F. Supp. 3d 449, 466–67 (N.D.N.Y. 2019) (quoting *Welch v. United Parcel Serv., Inc.*, 871 F. Supp. 2d 164, 174 (E.D.N.Y. 2012)). Rule 59 is not "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998). Rather, "the granting of a new trial is [ ] extraordinary relief . . . [and] 'is properly granted only upon a showing of exceptional circumstances.'" *Rosello v. Long Island Rail Rd. Co.*, 50 F. Supp. 3d 242, 249 (E.D.N.Y. 2014) (quoting *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2nd Cir. 2001)).

---

[3] The discussion of the legal standard for a Rule 59 motion is taken from Chief Judge Sannes's thorough discussion in *Encarnacion v. Spinner*, No. 9:15-cv-1411 (BKS/ML), 2023 WL 2785745, at *1–*2 (N.D.N.Y. Apr. 5, 2023).

In evaluating a motion for a new trial pursuant to Rule 59, "a trial judge hearing a motion for a new trial 'is free to weigh the evidence . . . and need not view it in the light most favorable to the verdict winner.'" *Song*, 957 F.2d at 1047 (quoting *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir. 1978)). A "court [may] independently weigh the evidence presented at trial to determine whether the jury's verdict is 'seriously erroneous' or resulted in a 'miscarriage of justice.'" *Finn-Verburg v. N.Y. State Dep't of Lab.*, 165 F. Supp. 2d 223, 228 (N.D.N.Y. 2001) (quoting *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 875 (2d Cir.1992)). "In making this determination, the trial court is afforded considerable discretion." *Id.* "But the decision whether to credit a witness's testimony is within the discretion of the jury." *Toliver v. N.Y.C. Dep't of Corr.*, 202 F. Supp. 3d 328, 335–36 (S.D.N.Y. 2016); *see also Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012) (noting that "a judge 'should rarely disturb a jury's evaluation of a witness's credibility'" (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998))). A court's prerogative to weigh the evidence presented at trial "is not a permission slip to 'ignore the jury's role in resolving factual disputes and assessing witness credibility.'" *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 490 F. Supp. 3d 593, 616–17 (E.D.N.Y. 2020) (quoting *Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 558–59 (S.D.N.Y. 2010)).

A trial court has considerable discretion in determining whether evidence is admissible. *See Barrett v. Orange Cnty. Hum. Rts. Comm'n*, 194 F.3d 341, 346 (2d Cir. 1999). Thus, a new trial will be granted on the basis of improper evidentiary rulings only where improper rulings "affect[ ] a substantial right of the moving party." *Mem'l Drive Consultants, Inc. v. ONY, Inc.*, 29 F. App'x 56, 61 (2d Cir. 2002) (summary order) (citing *Malek v. Fed. Ins. Co.*, 994 F.2d 49, 55 (2d Cir. 1993)). Whether an evidentiary error implicates a substantial right depends on "the likelihood that the error affected the outcome of the case." *Malek*, 994 F.2d at 55 (quoting *Jordan*

*v. Medley*, 711 F.2d 211, 218 (D.C. Cir. 1983) (Scalia, J.)). "Where there has been an objection, a new trial is warranted if the [c]ourt's evidentiary ruling was 'clearly prejudicial to the outcome of the trial,' taking into account 'the record as a whole.'" *Graham v. City of N.Y.*, 128 F. Supp. 3d 681, 705 (E.D.N.Y. 2015) (quoting *Johnson v. Strive E. Harlem Emp. Grp.*, 990 F. Supp. 2d 435, 450 (S.D.N.Y. 2014)). "But where [the moving party] did not object, a new trial is warranted only for plain error 'so serious and flagrant that it goes to the very integrity of the trial.'" *Johnson*, 990 F. Supp. 2d at 450 (quoting *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005)).

**B. Analysis**

**1. Jury Instructions**

Plaintiff argues that the Court erred by failing to correct instructions which read "[e]ven if Plaintiff proved his case, you must still find the defendants not guilty." Dkt. No. 177 at 23 (alteration omitted). Defendants respond that no such instruction was read to the jury and that, although the Court made an error when reading the final instructions, the Court corrected that error. Dkt. No. 197-9 at 15–16.

"Erroneous or inadequate jury instructions may constitute grounds for a new trial, provided the errors are 'prejudicial in light of the charge as a whole.'" *Grant v. City of Syracuse*, 357 F. Supp. 3d 180, 197 (N.D.N.Y. 2019) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 156 (2d Cir. 2012)). "An erroneous jury instruction 'misleads the jury as to the correct legal standard or does not adequately inform the jury on the law.'" *Id.* at 197–98 (quoting *Lore,* 670 F.3d at 156 and citing *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 153 (2d Cir. 1997)). "An error in a jury instruction is not prejudicial 'when [the court is] persuaded it did not influence the jury's verdict.'" *Id.* at 198 (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 56 (2d Cir. 2012)). "'An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" *Id.* (quoting *Lore*, 670 F.3d at 156 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). Finally,

"[a] new trial is not warranted if the instructions '"read as a whole, presented the issues to the jury in a fair and evenhanded manner."'" *Id.* (quoting *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 152 (2d Cir. 2014) (quoting *Lore*, 670 F.3d at 156)).

At the outset, the Court did not, as Plaintiff argues, read the statement that "[e]ven if Plaintiff proved his case, you must still find the defendants not guilty" to the jury. Dkt. No. 177 at 23 (alteration omitted); *see* Dkt. No. 188, 892:5–927:23. However, during the final instructions, the Court mistakenly stated that "[i]f you conclude that plaintiff has established any claim by a preponderance of the evidence, you must decide against plaintiff as to that claim." *Id.* at 906:12–14. Plaintiff's counsel raised the error immediately after the Court read the final instructions. *Id.* at 923–24. The parties and the Court agreed that the Court should read the "preponderance of the evidence" instruction to the jury again to correct the error. *Id.* The Court then corrected the error stating:

> I also am going to read you, I also want to instruct you again on the preponderance of evidence. You are not -- you are to consider all of my instructions as a whole, but I may have misstated something and so I'm going to read that portion to you again. As the plaintiff in this action, Reggie Caswell must establish by a preponderance of the credible evidence that his excessive force, failure to intervene, and failure to protect claims and the elements that comprise those claims are true. If you conclude that plaintiff has failed to establish any claim by a preponderance of the evidence, you must decide against plaintiff as to that claim.

*Id.* at 925:11–22.

Given that the Court verbally corrected the jury instructions, the instructions did not mislead the jury as to the legal standard to be applied to Plaintiff's claims such that the instructions would warrant a new trial.

Plaintiff also raises for the first time in his reply brief that a statement of "in 2020" in the jury instructions "was prejudicial in that it brought to mind to the all white jury of the race riots

that took place all over the country," even though he concedes that there is no reflection of such a statement in the trial transcript. Dkt. No. 204 at 19–22. There is no indication that a statement, which was not presented to the jury, could have influenced the jury's verdict. As a result, this is not a sufficient basis for a new trial.

**2. Plaintiff's Expert Witness**

Plaintiff argues that the "Court committed reversible error when it allowed Plaintiff's Expert to testify, but not to any of the issues germane to Plaintiff's case thus depriving Plaintiff of his rights to a fair trial." Dkt. No. 177 at 24. He also asserts that his expert was not permitted to testify regarding "any of the . . . issues relevant to Plaintiff," including "[v]iolence against LGBQTI persons in the prison environment," "[c]orrectional cell assignment practices as they relate to Gangs and LGBQTI status," "[t]he nature of gang activity and gang codes within prisons," "PREA screening and Defendants training and actions as they relate to it," "[c]orrectional standards for facility superintendents," and "[e]vidence relevant to investigating and assessing the type and amount of force." *Id.* Plaintiff concludes by stating that Defendants' objections "rendered" the expert's testimony "irrelevant." *Id.* In his reply brief, Plaintiff also states that his expert was not able to testify as to his experience in the Department of Corrections or to his general opinions. *See* Dkt. No. 204 at 23–24.

Defendants respond that Plaintiff's claims are conclusory, but "[i]n any event, a review of the expert's testimony at trial reflects that the expert provided substantial testimony regarding the areas listed by Plaintiff," and that to the extent that Plaintiff argues that "Defendants' repeated objections deprived him of the opportunity to submit testimony, such argument lacks any legal support." Dkt. No. 197-7 at 13.

When a party seeks to introduce expert testimony, the Federal Rules of Evidence provide that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if" the following four criteria are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*United States v. Mendlowitz*, No. 21-2049,2023 WL 2317172, at *3–4 (2d Cir. 2023) (quoting Fed. R. Evid. 702). "'While the proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied, . . . the district court is the ultimate gatekeeper.'" *United States v. Jones*, 965 F. 3d 149, 162 (2d Cir. 2020) (quoting *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007)); *see also* Fed. R. Evid. 104(a); *United States v. Cruz*, 363 F.3d 187, 192 (2d Cir. 2004)). "The Federal Rules of Evidence assign to it 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Williams*, 506 F.3d at 160 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).

As an initial matter, the Court denied Defendants' motion to exclude the testimony of Plaintiff's expert witness, Dan Pacholke. Dkt. No. 184 at 6–8. Specifically, the Court rejected Defendants' objections to Mr. Pacholke's testimony related to gangs concluding that he could offer the following testimony: (1) confirmation of gang affiliation; (2) gang codes of conduct prohibiting contact with homosexuals; and (3) how these issues interact with prisoner safety. *Id.* at 6. The Court explained, that "[a]summing that there's a factual predicate for the proposed testimony . . . such as that plaintiff's cellmates were gang members, then I find that the proposed testimony as articulated in Docket 160 [a letter reflecting the positions of the parties after they met and conferred

regarding expert issues] is both useful and relevant to the jury, without invading the province of the jury or the court." *Id.* at 7:2–7. Regarding the testimony about (1) vulnerability assessments and PREA screening; and (2) PREA training and LGBTI violence and harassment in investigations, the Court found that "the proposed testimony is, based on the proffered evidence, both useful and relevant to the jury, applying the necessary standard." *Id.* at 7–8.

In addition, contrary to Plaintiff's arguments, Mr. Pacholke testified about the following topics that Plaintiff identified in his motion. Regarding gangs, Mr. Pacholke testified that gang members often have codes of conduct about "not double celling with someone that's gay" and "rules around what they have to do if they're in an environment with those type of people" such as "[a]ssault them, get them out of the cell in one way or another." Dkt. No. 186 at 557. In addition, he testified that "correctional standards require officers to consider gang affiliation when making double cell assignments . . . for safety." *Id.* at 559. He further testified about how he has discovered a gang's code of conduct. *Id.* at 559–61. Finally, regarding gangs, he testified "[t]hat [i]t would be irresponsible at the least" to ignore information about gangs "because they commit so many violent acts within correctional facilities and correctional systems." *Id.* at 561. Although not mentioned by Plaintiff, Mr. Pacholke also testified that incarcerated people would be most vulnerable in their cells in the facility where Plaintiff was housed because that is where violence would occur. *Id.* at 541.

Regarding PREA screening, Mr. Pacholke testified regarding PREA standards for cell assignments, the PREA form and process generally, and the PREA forms completed for Plaintiff and two others. *Id.* at 541–47. He also testified that PREA requires training in correctional facilities, and he testified about a PREA compliance audit. *Id.* at 543.

Regarding complaints, Mr. Pacholke testified about how to investigate safety complaints, the incompleteness of the investigation here, and correctional standards. *Id.* at 547–50. Finally, Mr. Pacholke testified regarding his experience in corrections, *see, e.g.*, *id.* at 533–39, as well as his relevant expert opinions. The jury was able to consider all of this testimony and accept all of it if the jury chose to do so.

To the extent that Plaintiff's able counsel chose not to ask certain questions, that is not a basis for a new trial. In addition, to the extent that Plaintiff focuses on the Court's evidentiary rulings regarding specific questions during Mr. Pacholke's testimony—sustained because of the form of the specific questions and lack of foundation, *id.* at 551–55, 558–61,—he does not identify how they were errors. In any event, considering the record as a whole, Plaintiff has not established that there is any reason to believe that even if any of these evidentiary decisions were errors, that they would have been "clearly prejudicial to the outcome of the trial, taking into account the record as a whole." *Graham*, 128 F. Supp. 3d at 705 (quotation and citation omitted). In fact, considering the entirety of Mr. Pacholke's testimony, the jury was able to consider the crux of the testimony that Plaintiff's able counsel sought to present.

**3. Defendant Helm's Criminal Conviction**

Plaintiff argues that the Court erred in not allowing any testimony or evidence regarding Defendant Helms' 2019 conviction of first-degree cruelty to animals. *See* Dkt. No. 177 at 16 (which Plaintiff states was a 2020 conviction). Defendants respond that a court may preclude testimony of prior criminal convictions based on relevance and unfair prejudice when any such conviction relates to a crime that does not meaningfully reflect that individual's truthfulness. *See* Dkt. No. 197-9 at 11–12.

"Rule 609(a)(1) of the Federal Rules of Evidence provides that, in a civil case, 'subject to Rule 403,' evidence of a prior conviction 'must be admitted' to impeach a witness where the

conviction was 'for a crime that . . . was punishable . . . by imprisonment for more than one year.'" *Brandon v. Kinter*, 13-cv-939 (BKS/ATB), 2021 WL 3032693, at *1 (N.D.N.Y. Jul. 19, 2021) (quoting Fed. R. Evid. 609(a)(1)(A)). "In weighing the probative value of the evidence of the prior conviction against its prejudicial effect, courts in this Circuit consider the following factors: (1) 'the impeachment value of the prior crimes,' (2) 'the date of the conviction and the [party's] subsequent history,' (3) 'the degree of similarity between the past crimes and this crime,' (4) 'the centrality of the [party's] credibility in this case,' and (5) 'the importance of the [party's] testimony.'" *United States v. Clanton,* 758 F. Supp. 3d 93, 107 (E.D.N.Y. 2024) (quoting *United States v. Brown*, 606 F. Supp. 3d 306, 311–12 (E.D.N.Y. 2009)).

"When a court finds that the evidence's probative value outweighs its prejudicial effect, the court may admit evidence of the prior conviction for purposes of impeachment. However, in introducing the evidence of the prior conviction, the impeaching party . . . is generally limited to establishing the bare [or essential] facts of the conviction: usually the name of the offense, the date of the conviction, and the sentence." *Brown*, 606 F. Supp. 2d at 312 (internal quotation omitted). In the Second Circuit, it is within the discretion of the district court to further limit the evidence of the prior conviction to exclude the nature or statutory name of the offense. *Id.* In addition, a district court has broad discretion in imposing reasonable limits on cross-examination based on unfair prejudice and relevance. *United States v. Walker*, 974 F.3d 193, 207 (2d Cir. 2020).

Here, Defendants challenged the admissibility of only the name of the offense. After analyzing the first-degree cruelty to animals conviction under Rule 609(a)(1) and concluding that the probative value of the name of the offense was substantially outweighed by the danger of unfair prejudice and jury misuse of the evidence for propensity even with a limiting instruction, the Court allowed impeachment regarding that conviction except for the name of the offense. *See* Dkt. No.

164 at 26:6–27:22. As a result, the Court allowed Defendant Helms to be impeached with the fact that he had been convicted of a felony as well as the date of the conviction and his sentence, but not the name of the offense. *Id.*

Although Plaintiff contends that all information regarding the felony conviction should have been admitted for the purposes of truthfulness, *see* Dkt. No. 177 at 25, 26, Plaintiff has not established that the Court abused its discretion by excluding the name of the offense under Rule 403. In fact, Plaintiff argues that the "probative value" of the conviction "is outweighed by any prejudice." Dkt. No. 177 at 16. That is not the standard, and Plaintiff does not articulate why the probative value of the name of the offense was not outweighed by the danger of unfair prejudice and the danger that the jury would use it as propensity evidence even with a limiting instruction. But even if that decision were an error preserved by objection, Defendant Helms was impeached with the fact that he had been convicted of a felony, the date of his conviction, and his sentence, and excluding the name of the offense would not be "clearly prejudicial to the outcome of the trial, taking into account the record as a whole." *Graham*, 128 F. Supp. 3d at 705 (quotation omitted).

**4. Use of Letter in Defendants' Summation**

Plaintiff argues that he is entitled to a new trial because Defendants, during summation, "published a letter from Supt. Uhler reflecting that Plaintiff had been to the SHU at least 6 prior times in violation of this Court's order regarding Plaintiff's disciplinary record." Dkt. No. 177 at 26. Defendants respond that "[t]he only material that was presented to the jury during Defendants' closing was portions of Plaintiff's Exhibit 55, which was admitted into evidence during Plaintiff's case in chief and consisted of medical documentation related to Plaintiff's injuries." Dkt. No. 197-9 at 17.

"In ruling on a motion for a new trial based on an improper summation, 'the key inquiry is whether counsel's conduct created undue prejudice or passion which played upon the sympathy of

the jury.'" *Flores v. Cnty. of Suffolk*, No. 2:16-cv-2502, 2020 WL 1323075, at *6 (E.D.N.Y. Mar. 18, 2020) (quoting *Okraynets v. Metro. Transp. Auth.*, 555 F. Supp. 2d 420, 428 (S.D.N.Y. 2008) (additional quotation omitted)). "The trial court judge receives '[g]reat discretion' when determining whether such undue prejudice existed, because the judge 'was present throughout the whole trial and is best able to determine the effect of the conduct of counsel on the jury.' *Id.* (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1289 (2d Cir. 1990)) (internal quotation omitted). "The relevant inquiry in assessing whether a jury has been unduly prejudiced is whether there is a 'reasonable probability' that the jury's verdict was influenced by the improper conduct of counsel." *Chang v. City of Albany*, 150 F.R.D. 456, 459 (N.D.N.Y. 1993) (quoting *Draper v. Airco, Inc.*, 580 F.2d 91, 97 (3d Cir. 1978)).

Contrary to Plaintiff's arguments, there is no record that the letter identified by Plaintiff was published to the jury during Defendants' summation. *See* Dkt. No. 187 at 837–67.[4] Plaintiff's argument fails because there is no evidence that the Court committed any error.

For all of these reasons, Plaintiff's motion for a new trial is denied.

## III. PLAINTIFF'S MOTION FOR AN ALTERED OR AMENDED JUDGMENT

Plaintiff moves for an altered or amended judgment. *See* Dkt. No. 177 at 21–22. Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "A court may grant a Rule 59(e) motion only when the movant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142–43 (2d Cir. 2020) (citation altered) (quoting *Kolel*

[4] The fact that Upstate Correctional Facility was primarily a special housing unit (SHU) was mentioned several times during the trial, including by Plaintiff's attorney. *See, e.g.*, Dkt. No. 187, 794:1–8.

*Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013)). A plaintiff bears a "heavy burden," and Rule 59(e) is an "extraordinary remedy that is to be employed sparingly." *Moon Rocket Inc. v. City of New York*, No. 24-cv-4519, 2025 WL 2324074, at *2 (S.D.N.Y. Aug. 12, 2025) (quoting *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 10 F. Supp. 3d 460, 475 (S.D.N.Y. 2014)).

None of Plaintiff's arguments satisfy Rule 59(e)'s demanding standard to alter or amend a judgment. *See* Dkt. No. 177 at 21–22. First, Plaintiff does not identify any intervening change in controlling law between entry of judgment in this case and his Rule 59(e) motion. Plaintiff also does not cite any recent cases that would suggest such a change. Second, Plaintiff does not seek to introduce any newly available evidence. Instead, Plaintiff merely states that he has "demonstrated the seriously erroneous result and a miscarriage of justice on all claims asserted." *Id.* at 22. Finally, Plaintiff has not identified any clear error that needs to be corrected or established that the judgment must be amended to prevent manifest injustice. Plaintiff was ably represented during the trial, and his attorneys tried the case vigorously, but the jury rejected Plaintiff's version of events. Therefore, Plaintiff's argument fails as he cannot meet the "heavy burden" required under Rule 59(e).

## IV. DEFENDANTS' MOTION FOR A BILL OF COSTS

Federal Rule of Civil Procedure 54(d)(1) provides that "costs other than attorney's fees should be allowed . . . to the prevailing party unless the court directs otherwise." *Sacco v. Daimler Chrysler Corp.*, No. 05-cv-1435 (TJM), 2008 WL 2858652, at *1 (N.D.N.Y. July 22, 2008) (alteration in original) (citation omitted). The costs that may be awarded to a prevailing party are set forth in 28 U.S.C. § 1920. *See Pachura v. Hegseth*, No. 6:21-cv-316 (AMN/MJK), 2025 WL 2391689, at *1 (N.D.N.Y. Aug. 18, 2025). Section 1920 states, in relevant part:

A judge or clerk of any court of the United States may tax as costs the following:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

In civil litigation, awarding costs to the prevailing party is the rule – not the exception. *See Whitfield v. Scully*, 241 F.3d 264, 270 (2d Cir. 2001), *abrogated on other grounds by Bruce v. Samuels*, 577 U.S. 82 (2016). Therefore, "the losing party has the burden to show that costs should not be imposed; for example, costs may be denied because of misconduct by the prevailing party, the public importance of the case, the difficulty of the issues, or the losing party's limited financial resources." *Id.* (citations omitted). "The decision to award costs to a prevailing party under Rule 54(d)(1) rests within the sound discretion of the district court." *McEachin v. Goord*, No. 9:01-cv-0259 (GDB), 2007 WL 1571981, at *1 (N.D.N.Y. May 25, 2007) (citation omitted).

Defendants seek $3,974.68 in costs relating to deposition transcripts, witness fees, and exemplification and copying fees. *See* Dkt. Nos. 175, 195. Plaintiff opposes Defendants' motion. *See* Dkt. Nos. 181, 183, 193.

### A. Transcript Fees

Defendants request $2,338.16 for the transcription of the depositions of Plaintiff, taken on July 29, 2021, and Dan Pacholke, taken on December 17, 2023. *See* Dkt. No. 175 at 3, 6, 7. Both Plaintiff and Mr. Pacholke testified at trial, and therefore the deposition transcripts were necessary in order to cross-examine them (or to be prepared to do so). *See Yunus v. Jones*, No. 9:16-cv-1282 (GTS/ATB), 2020 WL 3026238, at *3 (N.D.N.Y. June 5, 2020); *see also* Text Minute Entries for

Day 1 of Jury Trial held on September 8, 2025, Day 2 of Jury Trial held on September 9, 2025, and Day 3 of Jury Trial held on September 10, 2025. As a general matter, "the reasonable costs of transcribing depositions are properly taxed in favor of the prevailing party." *Green v. Venettozzi*, No. 9:14-cv-1215 (BKS/CFH), 2019 WL 4508927, at *1 (N.D.N.Y. Sept. 19, 2019) (citation omitted). Defendants' request for costs in the amount of $2,338.16 is therefore substantiated.

**B. Witness Fees**

Defendants seek $433.52 for witness fees for two non-party witnesses, Matthew Welch and Chris King. *See* Dkt. No. 175 at 1–4, 8–13. Defendants seek the statutory witness attendance fee of $40.00 for one day of testimony for Mr. Welch. *See* 28 U.S.C. § 1821(b); *see also New Skete Farms, Inc. v. Murray*, No. 1:06-cv-486 (GLS/RFT), 2009 WL 10680320, at *3 (N.D.N.Y. Apr. 3, 2009) ("A prevailing party may recover its witness costs at a rate of $40 for each day the witness gave testimony at a trial or deposition.").

Furthermore, Defendants seek $149.52 ($74.76 each) for Mr. Welch and Mr. King's mileage, calculating the mileage at the United States General Services Administration rate of $0.21 per mile.[5] *See* 28 U.S.C. § 1821(c)(2).

Moreover, Defendants seek $244.00 ($122.00 each) for overnight lodging for Mr. Welch and Mr. King, which complies with the requirements of 28 U.S.C. § 1821(d). *See* 28 U.S.C. § 1821(d)(1) ("A subsistence allowance shall be paid to a witness when an overnight stay is

---

[5] Defendants calculated a round trip to the James M. Hanley Federal Building, 100 S. Clinton Street, Syracuse, NY 13261, from Upstate Correctional Facility. *See Previous Government-Furnished Auto Rates*, United States General Services Administration, effective January 1, 2025, https://www.gsa.gov/travel/plan-a-trip/transportation-airfare-rates-pov-rates/privately-owned-vehicle-pov-mileage-reimbursement/pov-mileage-rates-archived#goauto (last visited September 4, 2026).

required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day."). It also complies with the GSA FY2025 Daily Lodge Rate for Syracuse, New York.[6] *See Powell v. Labare*, No. 9:23-cv-848 (ECC/DJS), 2026 WL 820434, at *2 (N.D.N.Y. Mar. 25, 2026). The request for $433.52 for witness fees is therefore substantiated. *See* United States District Court for the Northern District of New York Guidelines for Bills of Costs (Guidelines) §§ II(F)(1)(a)–(c), (e).

### C. Exemplification and Copying Fees

Defendants request $1,203.00 in fees for exemplification and copying related to Defendants' Rule 26 mandatory disclosures, supplemental disclosures, and responses to Plaintiff's discovery demands. *See* Dkt. No. 175 at 1, 3; *see also* Guidelines § II(H)(1)(g); *Encarnacion*, 2023 WL 2785745, at *7 (noting that "[c]ourts interpret [28 U.S.C. § 1920(4)] to include photocopying charges for discovery" (alterations in original) (quoting *Green*, 2019 WL 4508927, at *2)). Defendants "provided sufficient information regarding the purpose of the copies" and these copies were "necessary [as they] relate to the 'initial disclosure requirements.'" *Id.* (quoting *Green*, 2019 WL 4508927, at *2). Thus, Defendants have "provided sufficient information regarding the purpose of the copies" and they are necessary in this case. *Id.* (quoting *Green*, 2019 WL 4508927, at *2). Defendants' request for $1,203.00 for exemplification and copying is therefore substantiated.

### D. Plaintiff's Objections

Plaintiff opposes Defendants' motion on several grounds: (1) the motion for bill of costs was not properly served upon him; (2) the motion for bill of costs was untimely; (3) he is asserting

---

[6] *See* GSA FY 2025 Daily Lodging Rates for Syracuse, New York, https://www.gsa.gov/travel/plan-book/per-diem-rates (last visited September 4, 2026).

meritorious claims and any appeal will be made in good faith; and (4) Plaintiff's financial situation renders him unable to pay the bill of costs, and therefore it cannot be imposed upon him. *See* Dkt. Nos. 181, 183, 193.

**1. Service Was Proper**

Plaintiff objects to Defendants' motion for a bill of costs on the basis of improper service. *See* Dkt. Nos. 181 at 1, 183 at ¶ 7(a), 193 at 2. Federal Rule of Civil Procedure 5 requires that, unless provided for otherwise, written motions must be served on the opposing party, unless the party is represented by an attorney, in which case service must be made on the attorney. *See* Fed. R. Civ. P. 5(a)(1)(d), 5(b)(1). Furthermore, "sending [the motion] to a registered user by filing it with the court's electronic-filing system" is proper service unless the "sender learns that the filing did not reach the person to be served." *Id.* at 5(d)(2)(E).

Defense counsel declared under penalty of perjury that a copy of the bill of costs was served upon Plaintiff's former counsel by electronic service. *See* Dkt. No. 175 at 1. Defendants filed the motion for bill of costs on September 29, 2025, *see* Dkt. No. 175, ten (10) days before Plaintiff's former counsel filed a motion to withdraw from representation, *see* Dkt. No. 176, and sixteen (16) days before the motion to withdraw representation was granted, *see* Dkt. No. 178. Furthermore, Plaintiff's former counsel stated that Plaintiff intended to proceed *pro se* with respect to a response to the motion for bill of costs, and that counsel had previously mailed Plaintiff a copy of the motion. *See* Dkt. No. 176 at 1. Moreover, after Plaintiff's initial statement that he was never served with the motion, Defendants served an additional copy upon Plaintiff, *see* Dkt. No. 195-2, as did the Clerk of Court, *see* Dkt. No. 182, indicating that these individuals further acknowledged Defendant's *pro se* status, Dkt. No. 183 at ¶ 7(c). Therefore, Plaintiff's claim that the bill of costs should be rejected due to inadequate service is without merit.

**2. The Motion Was Timely**

Plaintiff objects to Defendants' motion for a bill of costs because it is "untimely in violation of Fed. R. Civ. P. § 54(d)(1)." Dkt. No. 183 at ¶ 7(b). As set forth in the Local Rules for the Northern District of New York, a verified bill of costs must be filed within thirty (30) days after entry of judgment by the party entitled to recover costs. *See* L.R. § 54.1(a); *see also* Guidelines § I(C)(1). Furthermore, the parties were ordered to file all post-trial motions no later than October 10, 2025. *See* Dkt. No. 169. The motion for bill of costs was filed on September 29, 2025, before the required deadlines. *See* Dkt. No. 175. Furthermore, Defendants were not required to seek leave of the Court to file the bill of costs, regardless of Plaintiff's *pro se* status. *See* Dkt. No. 183 at ¶ 7(d). As such, Plaintiff's objection is without merit.

**3. Stay Pending Appeal**

Plaintiff notes in his opposition to Defendants' motion for a bill of costs that his "case has merit and that any appeal taken would be in good faith" and that he "does in fact wish to appeal to the Second Circuit . . . ." Dkt. No. 183 at ¶¶ 9, 9(a). This is construed as a request for a stay pending appeal.

Under the Guidelines, "[u]less otherwise ordered by the District Court, or the Circuit Court of Appeals pursuant to Fed.R.App.P. 8, the filing of an appeal shall not stay the taxation of costs . . . ." § I(F)(2). "While [Federal Rule of Civil Procedure] 62 outlines the mechanism for how a stay may be obtained while an appeal is pending, it does not limit the district court's inherent power to issue a stay in a manner that does not fall within the scope of the Rule." *Miller v. City of Ithaca, N.Y.*, No. 3:10-cv-597 (GLS/DEP), 2017 WL 61947, at *4 (N.D.N.Y. Jan. 5, 2017) (internal citation omitted).

"The party requesting a stay bears the burden of showing that the circumstances justify an exercise of th[e court's] discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). In deciding

whether to stay proceedings, courts consider four factors, the first two of which "are the most critical": "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

Here, Plaintiff has not made any showing of a likelihood of success on the merits or irreparable injury absent a stay. Having considered the applicable factors, Plaintiff has failed to meet his burden of showing that the circumstances here warrant a stay, and his motion for a stay of taxation of costs pending appeal is therefore denied.

**4. Plaintiff's Financial Circumstances**

Defendants' motion seeks $3,974.68 in costs relating to deposition transcripts, witness fees, and exemplification and copying fees. *See* Dkt. Nos. 175, 195. Plaintiff asserts that Defendants' motion should be denied because he is indigent. Dkt. No. 183 at ¶ 8. Plaintiff states that, over the past six months, his only source of income is $4.11 every two weeks. *Id.* Plaintiff further supplied inmate financial statements, indicating that the largest monthly balance since January 1, 2025 was $17.34, and the lowest balance was $0.00. *See* Dkt. No. 193 at 5–13.

"Generally, a district court may deny costs on account of a losing party's indigency, but indigency *per se* does not automatically preclude an award of costs, and the party asserting a lack of funds must demonstrate his indigency." *Cutie v. Sheehan*, No. 1:11-cv-66 (MAD), 2016 WL 3661395, at *3 (N.D.N.Y. July 5, 2016) (internal quotation marks and citations omitted and emphasis in the original). In addition, "[a] court need not award costs if its finds that such an award would be inequitable." *Bekiaris v. United States,* No. 96 Civ. 302, 1998 WL 734362, at *1 (S.D.N.Y. Oct. 20, 1998). A court may consider factors such as the plaintiff's financial hardship and good faith in bringing the action. *Id.*

Although Plaintiff has demonstrated his indigency by filing financial documents, this is not a compelling reason to deny costs in their entirety here. "Just as non-indigent litigants must consider the relative merits of their lawsuit against the pain an unsuccessful suit might inflict on their pocketbook, so must prisoners like [plaintiff] learn to exercise discretion and judgment in their litigious activity and accept the consequences of their costly lawsuits." *Williams v. Colatosi*, No. 97 Civ. 417, 2001 WL 913922, at *2 (S.D.N.Y. Aug. 13, 2001) (internal quotation and citation omitted).

After carefully considering the circumstances here, the motion is granted in part, in that the substantiated costs are reduced by half. Therefore, Defendants' request for costs for transcript fees is granted in the amount of $1,169.08, *see* Guidelines §§ II(D)(1)(c), (f), Defendants' request for costs for witnesses fees is granted in the amount of $216.76, *see* Guidelines §§ II(F)(1)(a)–(c), (e), and Defendants' request for costs for exemplification and copying fees in the amount of $601.50 is granted, *see* Guidelines § II(H)(1)(g).[7]

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) and (b), a new trial under Federal Rule of Civil Procedure 59(a), and for altered or amended judgment under Federal Rule of Civil Procedure 59(e), Dkt. No. 177, is **DENIED**; and it is further

[7] The Court received Plaintiff's letter regarding the inmate authorization form requested in the April 15, 2026 Memorandum-Decision and Order. *See* Dkt. No. 207. Upon review, Plaintiff does not need to provide a completed and signed inmate authorization form, as the $400 filing fee was paid on February 5, 2019. *See* Dkt. No. 1 Text Entry (stating the receipt number for the $400 filing fee is ANYNDC-4640928).

**ORDERED** that Defendants' motion for a bill of costs, Dkt. No. 175, is **GRANTED in part** and Defendants are awarded $1,987.34 in costs; and it is further

**ORDERED** that Plaintiff's request for a stay pending appeal, Dkt. No. 183 at 7, 8, is **DENIED**; and it is further

**ORDERED** that the Clerk of Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 10, 2026

Elizabeth C. Coombe
U.S. District Judge